WILLIAM M. NARUS, CAB #243633
Acting United States Attorney
District of Oregon
**WILLIAM M. McLAREN, OSB #143836**
William.McLaren@usdoj.gov
Assistant United States Attorney
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401
Telephone: (541) 465-6771
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | 6:25-cr-00170-MC |
| v. | **UNITED STATES' DETENTION MEMORANDUM** |
| **BERRET J. BROWN,** | |
| Defendant. | |

Defendant Berret J. Brown, 40, used the internet to sexually exploit minors as young as 8 and as old as 12. He met and chatted with kids using a video game, Roblox, and transitioned his chats to texting and covert image sharing platforms, like Snapchat. From there, he asked and instructed his victims to make him custom child pornography. Brown's known victims span the country—from California to Colorado to Georgia—and the investigation continues.

Brown's choice to target extremely young children, his careful concealment techniques designed to evade detection, and his criminal history all demonstrate his extreme danger to the community's most vulnerable members and risk of flight. He should be detained pending trial.

## BACKGROUND

I.    **The Minor Victims in Colorado and Georgia**

This case began with a minor victim under 10 years old located in Colorado (hereinafter, "Minor Victim 1" or "MV1").[1] MV1's older brother discovered sexual images and videos of MV1 on a family iPad. MV1's father reported that discovery to local authorities and a detective began investigating. The detective found that, in July and August of 2024, MV1 had been communicating with Snapchat user "d.moss5592." As detailed below, investigators learned that Berret J. Brown is the user behind d.moss5592.

As a result of Snapchat's features, including automatic deletion of chats and photographs, MV1's conversation with Brown was piecemeal. It included a month of flirtatious emojis and chats, culminating in MV1 sending Brown videos constituting child pornography. Beyond the emojis, Brown's intentions were evident from his chat to MV1 sent on August 23, 2024: "You wanna make daddy cum."

MV1 provided a child forensic interview and explained that Brown live-chatted with MV1 and requested "nudes." These conversations were both telephonic and by way of video calls. MV1 did not know what a "nude" was, but Brown explained to MV1 that he meant a photo displaying MV1's breasts and private area. MV1 explained Brown gave particular instructions as to where to locate MV1's cell phone camera when on the video calls and that he instructed MV1 to position MV1's camera in such a way that, in MV1's words, would allow him to "actually see my [genitals]."

Through a Snapchat search warrant, investigators identified chats Brown exchanged with other children using the d.moss5592 Snapchat account. They also found images he sent to other

---

[1] Victims' names, ages, precise locations, and genders will be anonymized to protect their privacy. All details are known to the government and can be provided to the Court upon inquiry.

Snapchat users, which are detailed below. One of the other chat conversations spanned a single day: August 23, 2024. Brown began it with, "Hey princess get daddies big dick hard." When the child Brown was chatting with (hereinafter "Minor Victim 2" or "MV2") told Brown they were only 13 years old, Brown stated, "I don't care about age at all." MV2 responded to a Brown's request for sexual imagery by sending a video constituting child pornography. Brown then sent the child a photo and video of himself masturbating (which showed an upper thigh tattoo). The two then discussed video chatting then the chats reflect a video chat began. Brown then instructed MV2, via text, how to position MV2's phone camera while on the video chat. He explained to MV2 how to perform a specific sexual act.

After discovering the interaction with MV2, investigators used account information from MV2's Snapchat account and located MV2's father in Georgia. He identified a sanitized still image of his child clipped from the sexual chat with Brown and explained that MV2 lives between Nevada and Georgia based on a split-custody arrangement.

## II. Identification of Berret Brown as "d.moss5592"

Though Brown was careful—and explicit—about not wanting to show his face when communicating with children online, he used the d.moss5592 Snapchat account to send one user the below "mirror selfie" photograph blocking his face but depicting his distinct tattoos[2]:

---

[2] This photograph has been partially cropped for spacing and size purposes—the full photograph is depicted in Government's Exhibit 1, specifically Gov. Ex 1-1.

**United States' Detention Memorandum**                                                              **Page 3**



*Photograph sent by d.moss5592 to another Snapchat user, found via Snapchat search warrant. Gov. Ex. 1-1.*

Investigators also observed that Brown mentioned having a Roblox account, and that the Snapchat account had a recovery email address beginning with "lcdbrown312" as well as IP address logins resolving to Vida, Oregon on the days he chatted with MV1 and MV2.

Investigators obtained a warrant for the email account tied to d.moss5592 and found some notable emails. One email came from a dating app, Plenty of Fish, and identified a banned account associated with a specific phone number (discussed further below). Another email was sent by Roblox customer service and confirmed the purchase of a gift card for Robux—a virtual currency used by children to purchase in-game clothes, hairstyles, and accessories for virtual characters. An excerpt of the Robux email is depicted below and included at Gov. Ex. 1-2. Notably, the email begins with "Dear Berret":

**United States' Detention Memorandum**                                                                 **Page 4**

> Dear Berret,
>
> Thanks for purchasing a Roblox Gift Card! Your order has been processed and is now on its way. Here are the full details for your records:
>
> **Your Order #CND6KC5UVU**                    **Purchase Date: May 22, 2024**
>
> To: lcdbrown312@▮▮▮▮▮                         From: Berret
> Delivery Date: May 22, 2024                   Roblox Gift Amount: $10.00

*Confirmation for Roblox gift card found in the inbox of email account assigned to Brown's Snapchat account used to victimize MV1 and MV2.  Gov. Ex. 1-2.*

Other emails in the account appeared to be typical Facebook updates. Investigators followed one such update from a female user, searched her friends list, and found friends with the surname "Brown"—consistent with the lcdbrown312 email address connected to the d.moss5592 account. One friend, Berret "Bear" Brown, posted the below image in 2018[3]:



*Partial photograph of Berret J. Brown posted to his Facebook in 2018.  Gov. Ex. 1-3.*

---

[3] This image is depicted in full in Government's Exhibit 1, specifically Gov. Ex. 1-3. The government has redacted the face of an adult female who is not believed to be involved in the criminal activity as well as the names of uninvolved commenters to the post.

Investigators compared the tattoos in the mirror selfie sent from d.moss5592's account with those of Berret Brown and found them to be identical. Excerpted blow-ups from both photographs are depicted below:

 

*Tattoos in photo sent by the Snapchat user who victimized Colorado and Georgia children (left), compared to shoulder tattoo of Berret J. Brown on his Facebook page (right). Agents identified matching female face with closed eyes smoking cigarette positioned above "tribal" design.*

Finally, investigators determined Brown uses an email account beginning with "lcbbrown412," which is comparable to the above-discussed email account associated with the d.moss5592 Snapchat account ("lcdbrown312"). The 412 email account appears to be Brown's day-to-day email address, while the 312 email account appears to be primarily used for his child exploitation activities. The 412 email account also has identical IP address logins as that of the d.moss5592 Snapchat account, resolving to Vida, Oregon.

### III.     The Minor Victim in California

After identifying "d.moss5592" as Berret J. Brown and reviewing Brown's email contents, investigators learned of a connected CyberTip submitted to the National Center for Missing and Exploited Children. While the investigation into the CyberTip and associated information is, at this point, incomplete, the CyberTip's details bear a clear resemblance to the facts surrounding Brown's victimization of MV1 and MV2. A mother discovered that her child, who is under 10 years old ("Minor Victim 3" or "MV3") was chatting with a self-identified 19 year old male. The mother reported that MV3 explained first meeting a man on Roblox and then texting with that man via cell phone. The cell phone number with which MV3 was texting, beginning with "707," has two currently-known connections to Brown. First, that number is associated with a banned Plenty of Fish dating account found in Brown's email inbox, mentioned above. Second, the number is associated with a separate Snapchat account with the same creation IP address as that used by the d.moss5592 Snapchat as well as Brown's email accounts.

The specifics of the CyberTip are consistent with Brown's victimization of the Georgia and Colorado minors. The texts MV3's mother reported, which have been anonymized to remove MV3's identifying details below, began in a similar fashion to those Brown sent to MV2: "Hey princess send daddy something fire to get this big dick bricked up." At one point, MV3 sent images to the man, to which the man responded "perfect little [*genitals*]," reflecting his receipt of child pornography. The texts reflect MV3 then received a picture of a penis. Then the man sent MV3 the following text: "send daddy your body no face princess just neck down," and "do you like older guys with tattoos." As the conversation continued, the child stated "i am [*age younger than 10*]"—then the man stated "I don't care your cute af." All of this occurred on August 23, 2024, the same day Brown victimized MV2.

### IV. Charges, Search Warrants, and Arrest of Brown

On April 17, 2025, after FBI pieced together the attribution of the online accounts to Berret J. Brown, a grand jury returned a six-count indictment charging Brown with production of child pornography, coercion and enticement of a minor, receipt of child pornography, and transferring obscene material to a minor. These charges carry a maximum prison sentence of life and a mandatory minimum of fifteen years. Agents then sought to locate Brown and execute an arrest. They subpoenaed the Vida, Oregon IP address and found that it resolved to a specific property off of the McKenzie Highway east of Eugene, Oregon. They surveilled that house and observed a black 1970s Chevrolet Corvette parked outside. Investigators queried the Oregon DMV database and found a 1974 Chevrolet Corvette registered to Berret J. Brown.

On April 22, 2025, agents obtained a search warrant to collect geolocation information associated with cellular telephones suspected to be used by Brown (associated with his various accounts or subscribed by one of his parents and apparently in use by him). Once agents began collecting geolocation information, they surveilled Brown's residence in Vida, Oregon.

On April 30, 2025, agents executed a warrant to search Brown's residence, vehicles, and person. They located several firearms which others at the residence attributed to Brown, who is a convicted felon, as discussed below. In their investigation, agents identified particular background features from photos that Brown sent to one minor victim, including one masturbating video Brown sent the d.moss5592 account, showing him in a specific location with a baroque wallpaper design, a rubber-sealed window, and a clear towel bar with metal hardware. A sanitized, cropped photograph is depicted below, at left (the blurry lower-left corner displays a tattooed hand). On the right is a photograph taken by an agent upon execution of the search warrant at Brown's residence. The photographs are included in Gov. Ex. 1 at 1-4 and 1-5.

 

*Masturbation photograph sent by d.moss5592 (left) and bathroom in Brown's residence (right).*

The warrant also authorized agents to search Brown's person and his tattoos to confirm they match with those sent by the d.moss5592 account including, specifically, parts of an upper thigh tattoo displayed in a masturbation photograph sent to one of the minor victims. Agents photographed and compared those tattoos and, upon preliminary analysis, found them to match.

Brown is now scheduled for an initial appearance April 30, 2025 at 1:30 p.m..

## APPLICABLE LAW

A.     **Rules of Evidence Do Not Apply at a Detention Hearing**

The Federal Rules of Evidence do not apply in detention proceedings. Fed. R. Evid. 1101(d)(3); 18 U.S.C. § 3142(f). Accordingly, both the government and the defense may present evidence by proffer or hearsay. *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986); *see also United States v. Bibbs*, 488 F. Supp. 2d 925, 925, 26 (N.D. Cal. 2007).

/ / /

**B.      Standard and Burden**

Under the governing bail statute, 18 U.S.C. § 3142, the government bears the burden of proving by a preponderance of the evidence that a defendant is a flight risk; and community danger requires clear and convincing proof.  *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015).  Four factors help guide release decisions: (1) the nature and circumstances of the offense; (2) the weight of the evidence; (3) the nature and seriousness of the danger posed to the community; and (4) defendant's history and characteristics. 18 U.S.C. § 3142(g).

This case is eligible for a detention hearing and order pursuant to 18 U.S.C. § 3142(f)(1)(E) because the charged crimes involve a minor victim and Brown is charged by indictment with, among other things, production of child pornography which carries a fifteen-year mandatory minimum sentence.  The Bail Reform Statute provides that the charged offenses give rise to a rebuttable presumption that no condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(3)(E).  Although the burden of persuasion remains with the government, the presumption shifts the burden of production to the defendant.  *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008).  Even if the presumption is rebutted, however, the presumption does not disappear, but continues to carry evidentiary weight.  *Id*. ("The presumption is not erased when a defendant proffers evidence to rebut it [and] remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." (*citing United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir.1986)).

/ / /

/ / /

/ / /

## DISCUSSION

Brown presents with a willingness and ability to target very young minor victims using fake ages, false identities, and well-concealed online accounts. Brown's predation of minors in vulnerable online spaces—like video games used by young children—and his enticement of those minors into private chats, along with ease of obtaining contraband devices, all present a risk too great to tolerate. Taken with his relevant criminal history, he cannot rebut the presumption and should be detained. The factors supporting detention are addressed below.

### A. The Nature and Circumstances of the Offense and Weight of the Evidence Compel Detention (18 U.S.C. §§ 3142(g)(1) and (2))

The charged offenses center around Brown's enticement of MV1 during July and August 2024, his receipt of child pornography from MV1, his clear requests of MV2 to create child pornography in August 2024, and his transmission of masturbation videos to MV2 that same day.

While defendants consistently remind the Court that the weight of evidence is the least important factor, that factor becomes relevant if it reflects the likelihood Brown will pose a danger to the community. *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986). The charges here are supported by substantial evidence including, but not limited to, the forensic interview of MV1, search warrants of Brown's Snapchat and email account, photographic evidence taken from Brown's residence, and—perhaps above all—Brown's unmistakable tattoos, depicted above.

The "nature and circumstances" of Brown's abuse of MV1 and MV2, as well as his suspected abuse of MV3, reflect not only a danger posed by way of his sexual exploitation of multiple very-young minors—which alone is sufficient to carry the government's burden of persuasion—but they also reflect a heightened degree of guile and concealment. Brown

attempted to be careful—he used a false subscriber name,[4] a false email account, and employed a self-deleting chat/image application. He strived to avoid leaving a text trail. By transitioning from kids' video game platforms to phone and video calls, he partially succeeded in limiting the breadcrumbs he left behind. While his efforts were insufficient to evade the detectives assigned to this case, were he released he would know to employ a heightened degree of secrecy if he chose to reoffend. The risk of re-offense, taken with Brown's careful evasion of detection of his contact with young children, is too great.

This should give the Court pause when considering whether to entrust Brown to abide by release conditions dependent in large part upon good faith compliance. His willingness to exploit minor after minor in an almost-compulsive pattern should be treated as an unacceptable danger to the community's most vulnerable members. The nature and circumstances of the offenses weigh in favor of detention.

### B. The Seriousness of the Danger Posed to the Community Weighs in Favor of Detention (18 U.S.C. § 3142(g)(4))

The dangers that Brown poses to children online are not abstract. His activities on the internet are one and the same as his danger in the community. Any assurances about abstaining from internet use on release, or promises about using only monitored devices are insufficient to rebut the presumption and fall well short of ensuring community protection.

A host of recent cases in this District drive that point home. Child pornography offenders on pretrial release can, and do, obtain contraband devices and re-engage in the very criminal offenses for which they are charged. *See United States v. Cook*, Case No. 6:23-cr-00242-MC (D. Or. May 1, 2024) (child pornography distributor sentenced to 168 months' imprisonment, ECF

---

[4] Brown's accounts resolved to his deceased brother's name as well as the name of a specific individual apparently living in Wisconsin (a misspelling of that individual's name was used at least once).

No. 109, after obtaining contraband device and engaging in child pornography distribution while on pretrial release, ECF Nos. 84, 86, 87); *see also United States v. Williams*, Case No. 6:21-cr-00059-MTK (D. Or. Dec. 4, 2024) (child pornography distributor found to possess contraband device while on pretrial release, ECF No. 93, pending sentencing on original charges).

Similarly, child pornography offenders can, and do, circumvent electronic monitoring requirements on known devices. *United States v. Sparks*, Case Nos. 6:13-cr-00228-MTK (D. Or. June 7, 2023) (post-prison supervisee circumvented electronic monitoring software to access child pornography, issued an 11-month sanction by the Court, ECF No. 82).[5]

Brown's choice to coax minors from more-monitored video game platforms to less-monitored self-deleting image platforms suggests a willingness to circumvent detection methods. And Brown's efforts taken to hide his actions, along with his history of probation and parole violations discussed below, and his possession of firearms despite being a convicted felon all reflect an extremely low likelihood of compliance with potential release conditions. The risk of Brown's circumvention of anemic single device requirements and monitoring conditions is previewed by his repeated flouting of conditions imposed by other courts and by way of his felon status. Should Brown choose to disregard conditions imposed by the Court and overseen by Pretrial by employing the same circumvention methods he used to commit the charged offenses, the safety of very young children is at stake.

/ / /

/ / /

---

[5] Following release from the sanction, while on supervision, the same individual procured a contraband phone and reengaged in child pornography distribution. He is pending sentencing in that new matter. *United States v. Sparks*, 6:24-cr-00261-MTK (D. Or. 2024).

### C. Brown's History and Characteristics Weigh in Favor of Detention (18 U.S.C. § 3142(g)(3)(A))

Brown presents with a notable criminal history. While Brown appears to have lived in or around Vida, Oregon for some time and also appears to have employment in West Eugene, his relevant criminal history, though somewhat dated, weighs against release:

> (1) *Evasion of law enforcement*: Brown's most significant prior conviction includes evading a peace officer and wrong way driving in Clearlake, California (west of Sacramento). It appears he received a 44-month sentence in April 2014 related to that offense and certain controlled substance and fraudulent check offenses. That follows a previous offense, in 2013, for evading a peace officer.
>
> (2) *Violation of both parole and probation*: Brown appears to have been convicted of violating his parole or probation in 2011 (for being under the influence of a controlled substance) and again in 2014 (for the offenses listed above).
>
> (3) <u>Failure to appear</u>: Brown has at least one failure to appear offense in 2006. That charge was issued along with a DUI, receiving stolen property, and carrying a concealed dirk or dagger.

The instant charges appear to be Brown's first in the past decade, but he is now facing the greatest sentencing exposure of his life for criminal offenses far more serious than his past offenses. This history establishes Brown's risk of flight by at least a preponderance.

Beyond flight-related offenses, Brown's previous offenses in the general timeframe outlined above include hit and run, reckless driving, driving while suspended, and possessing a controlled substance for sale. Brown's community ties developed in recent years are overshadowed by his criminal history taken with all the facts known to investigators and this Court. He should be detained pending trial.

/ / /


/ / /

## CONCLUSION

For the reasons stated above, Berret J. Brown's exceptional risk to the community's most vulnerable members, taken with his sophisticated masking techniques and nationwide reach, compel his continued detention.

Dated: April 30, 2025

Respectfully submitted,

WILLIAM M. NARUS
Acting United States Attorney

/s/ *William M. McLaren*
WILLIAM M. McLAREN
Assistant United States Attorney